Charles B. HIRD,

v.

BATH IRON WORKS CORP. et al.

Supreme Judicial Court of Maine.

Argued April 30, 1986.

Decided July 22, 1986.

McTeague, Higbee, Libner, Reitman, MacAdam & Case, Patrick McTeague (orally), Jonathan Reitman, Brunswick, for plaintiff.

Norman & Hanson, Stephen Moriarty (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

VIOLETTE, Justice.

This is an appeal by the employee, Charles B. Hird, from a decision of the Appellate Division of the Workers' Compensation Commission reversing a single commissioner's award of benefits. After reviewing the action of the Appellate Division for errors of law only, we affirm.

On December 28, 1977 Hird injured his back by lifting a steel I-beam weighing 100 lbs. while working as a maintenance mechanic at Bath Iron Works (BIW). As a result of the injury, the employee underwent surgery and missed several days of work in 1978. Following Hird's timely report of injury to his employer, BIW made voluntary payments of compensation pursuant to the Longshoremen's & Harbor Worker's Compensation Act, 33 U.S.C. § 901 (1980) (hereafter "the federal act"). The employee accepted BIW's compensation payments and did not file a claim under the Maine Worker's Compensation Act (hereafter "the Maine act").

At the hearing on the claim, Hird attempted to generate evidence that BIW's insurance carrier had lulled him into the belief that the federal act was his sole remedy. Although there was some testimony from an insurance adjuster that seemed to suggest that Hird may have had the impression after conversations with

him that his remedy was purely federal in nature, Hird testified to having no recollection of any such conversations and never testified that he relied on any information supplied by the insurance carrier.

Hird received his last payment of compensation under the federal act on August 15, 1978. Although compensation was terminated on this date, Hird took no action to file a claim under the Maine act. In March of 1982, he experienced a severe recurrence of symptoms as a result of lifting a small piece of wood at home. As a consequence of the reinjury, Hird underwent several surgeries and missed an additional number of days at work. In September of 1982, four years after the receipt of his last compensation payment under the federal act, Hird filed a petition for award of compensation under the Maine act. Shortly thereafter, BIW filed a first report of injury and answered the petition asserting, *inter alia,* the statute of limitations as an affirmative defense.

Following a hearing on the petition, a single commissioner of the Worker's Compensation Commission awarded Hird total compensation for various dates in 1978 and 1982 and credited the employer with the voluntary payments made pursuant to the federal act in 1978. In findings of fact and conclusions of law, the commissioner found that the statute of limitations could not be raised as a defense because (1) BIW was equitably estopped from asserting such defense in light of the fact that its insurance carrier had lulled Hird into believing that the federal act was his sole remedy and (2)

Hird's belief that the federal act was his exclusive remedy constituted a "mistake of fact" under 39 M.R.S.A. § 95 (1978).

Following this award, BIW appealed the commissioner's decision to the Appellate Division pursuant to 39 M.R.S.A. § 103–B (Pamph.1985) contending that rejection of its statute of limitations defense was an error of law. The Appellate division agreed and reversed the single commissioner's decision to award benefits. In response the employee filed a petition for appellate review to this Court pursuant to 39 M.R.S.A. § 103–C (Pamph.1985) seeking to revive the single commissioner's decision granting him benefits.

### I.

As his first point on appeal Hird argues that the employer should be equitably estopped from raising the statute of limitations as a defense because (1) BIW failed to file a timely notice of injury as required by 39 M.R.S.A. § 106 (1978) and (2) the representations of BIW's insurance carrier that the federal act was his exclusive remedy caused Hird to file an untimely claim under the Maine act.

The statute of limitations provision in existence at the time Hird learned of his injury, 39 M.R.S.A. § 95 (1978) *amended by* P.L.1983, ch. 46,[1] provided for only two excuses for delay in filing a petition for award: 1) physical or mental incapacity and 2) mistake of fact as to the cause and nature of the injury.[2] The purpose of Sec-

---

**1.** Title 39 M.R.S.A. § 95 (1978), *amended by* P.L.1983, ch. 46 provided:

Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition as provided in section 94 shall be filed within 2 years after the date of the injury, or, if the employee is paid by the employer or insurer, without the filing of any petition or agreement within 2 years of any payment by such employer or insurer for benefits otherwise required by this Act. Any time during which the employee is unable by reason of physical or medical incapacity to file said petition shall not be included in the period aforesaid. If the employee fails to file said

petition within said period because of mistake of fact as to the cause and nature of the injury, he may file said petition within a reasonable time. In case of the death of the employee, there shall be allowed for filing said petition one year after such death. No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act.

**2.** Although Section 95 was amended by P.L.1983 ch. 46 to include failure by an employer to file a first report of injury among the factors that will toll the statute of limitations, we have no authority to apply the amendment retroactively. *Eaton v. Bath Iron Works Corp.,* 502 A.2d 1040

tion 95 is to reconcile an injured party's interest in compensation with the employer's interest in a terminal date to litigation. *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 537 (Me.1977). The general purpose of statutes of limitations is "to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims." *Langevin v. City of Biddeford*, 481 A.2d 495, 498 (Me.1984). The goal is to "protect the employer against claims too old to be successfully investigated and defended." 3 Larson, *Workmen's Compensation Law*, § 78.10 at 15–82 (1983).

Under the plain language of Section 95 an employee's claim "shall be barred" if he fails to file a petition within two years of the date of his injury and can show no physical or mental incapacity or mistake of fact as to the cause and nature of his injury which can excuse a late filing. Nowhere in Section 95 is the Commission empowered to apply other equitable principles to save untimely claims when the employee alleges that he failed to file a timely claim because he relied upon misinformation supplied by his employer about the nature of his remedies under the act.

Although we are not unmindful that during the time Hird filed his claim and the commission rendered its decision, there existed in the statute the legislative admonishment that the Workers' Compensation act should be liberally construed in favor of the employee, 39 M.R.S.A. § 92 *amended by* P.L. 1983 ch. 479 § 16;[3] *Rines v. Scott*, 432 A.2d 767, 769 (Me.1981), we also recognize "that the legislative mandate to apply a liberal interpretation to the act will not justify judicial creation of rights or liabilities under the guise of construction." *Rines*, 432 A.2d at 769 (citing *Delano v. City of South Portland*, 405 A.2d 222, 225

(Me.1979)). This Court long ago noted that the rights and obligations of the parties to a proceeding to obtain compensation for an injury arising out of employment are fixed and governed by the statute in force at the time when the accident occurred. *Lemelin's Case*, 123 Me. 478, 124 A. 204 (Me. 1924); *see also Lavoie v. International Paper Co.*, 403 A.2d 1186, 1191 (Me.1979) (rights of a party under the Workers' Compensation Act are purely statutory).

Language in *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 539 (Me.1977); *Eaton v. Bath Iron Works*, 502 A.2d 1040, 1043 (Me.1986) and other cases has led some to conclude that the list of narrow exceptions found in Section 95 can be augmented through judicial application of the concept of equitable estoppel when an employee alleges that he failed to file a claim because of reliance on misleading advice by an employer. As a threshold comment, we note that this Court has never affirmatively applied equitable estoppel to prevent an employer from raising the statute of limitations as a defense under Section 95. In *Pino* we held simply that the Workers' Compensation Commission incorrectly defined the elements of equitable estoppel by requiring the employee to establish that the employer *knowingly* or *intentionally* caused him to miss the two year deadline. The *Pino* Court remanded the case to the Commission without holding that equitable estoppel barred the employer's statute of limitations defense. Similarly, in *Eaton*, this Court held only that the record in that case failed to support application of the principle of equitable estoppel.

At this juncture, furthermore, we wish to eliminate any confusion that may have been engendered in those cases by expressly holding that the Workers' Compensation

n. 3 (Me.1986). Indeed, the employee does not claim that the new statutory language should be so applied. Instead, Hird seeks to have this Court affirm the single commissioner's application of equitable principles to revive his claim that was already barred when the amendment was enacted.

3. In 1983 the legislature amended Section 92 with a provision that eliminated the liberal construction language in favor of employees. *See* 39 M.R.S.A. § 92(1) (Pamph.1985). These changes, however, did not become effective until June 24, 1983.

Commission may not employ the doctrine of equitable estoppel to bar assertion of the statute of limitations as a defense when an employee alleges that he relied on misleading advice of his employer as to the nature of his remedies under the act. In addition to the authorities cited above, this result is also supported by a line of Maine cases which hold that the Workers' Compensation Commission has only such authority as is conferred upon it by express legislative grant or such as arises therefrom by implication as incidental to full and complete exercise of the powers granted. *Wentzell v. Timberlands, Inc.*, 412 A.2d 1213, 1215 (Me.1980; *see e.g., Levesque v. Levesque,* 363 A.2d 951, 953 (Me.1976) (commission lacks statutory authority to grant equitable remedy of reformation of workers' compensation insurance contract); *Joyce v. Conary,* 317 A.2d 794, 795 (Me.1974) (commission lacks statutory authority to dispose of a claim in a summary fashion by ruling on the jurisdiction defenses asserted prior to a hearing on the merits). *Mullen v. Brown Homes, Inc.,* 358 A.2d 557, 560 (Me.1976) (commission has no equitable powers to allow employer to suspend its payment of compensation following receipt of 3rd party recovery by employee). Without express or implied legislative authority to employ equitable estoppel to bar an employer's statute of limitation defense when an employee alleges that the untimelines was caused by his employer's misleading advice as to the nature of his remedies under the act, the commission in this case exceeded its authority by applying the doctrine.

Moreover, even if we were to allow application of equitable estoppel by the commission, the record in this case fails to support its application. Hird completely failed to establish either that the representations made by BIW's insurance carrier or BIW's failure to file a first report of injury caused him to fail to file a timely claim under the Maine act. Although there was some testimony from the insurance carrier that conversations with the employee could have created the impression that Hird's remedy was exclusively federal, Hird testified to having no conversations with the insurance adjustor at all. In these circumstances, we are hard pressed to discern how the employee can claim to have been misled by the insurance carrier when he testified to neither remembering the misleading conversation or participating in them. As a result, Hird's assertion that his claim can be saved on a theory of equitable estoppel must be rejected.

### II.

■ As his second point on appeal, Hird argues that his claim can be revived on the basis of the commissioner's alternative ruling that his belief that the federal act was his exclusive remedy constituted a "mistake of fact" under Section 95 which tolled the statute of limitations. In *Pino v. Maplewood Packing Co.,* 375 A.2d at 537 this Court held that the mistake of fact provision of Section 95 can be used as an excuse for a late filing in "those situations where the *injury* is latent or its relation to the accident unperceived." (emphasis added). *Cf. Malcolm v. Bath Iron Works Corp.,* 413 A.2d 1314, 1316–17 (Me.1980) (employee's mistaken belief that non-occupational benefits were in fact workers' compensation benefits, did not constitute a mistake of fact sufficient to avoid the statute of limitations). In this case Hird was completely aware that his injury on December 28, 1977 was related to his work at BIW and was thus not laboring under a mistake of fact as to the "cause and nature of the injury" within the meaning of Section 95.

Although we recognize that the statute was tolled until Hird received his last payment of benefits under the federal act, *Stockford v. Bath Iron Works Corp.,* 482 A.2d 843, 895 (Me.1984), those benefits ceased on August 15, 1978. Even after this termination, however, Hird took no action to secure his rights under the Maine act until four years had elapsed. As a result the employee's claim cannot be saved by the "mistake of fact" provision of Section 95.

The entry is:

Decision of the Appellate Division of the Workers' Compensation Commission affirmed.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.